**David BOHN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

No. 15983.

United States Court of Appeals
Eighth Circuit.

Nov. 6, 1958.

Certiorari Denied Jan. 12, 1959.
See 79 S.Ct. 320.

Linus J. Hammond, St. Paul, Minn., for appellant.

Kenneth G. Owens, Asst. U. S. Atty., St. Paul, Minn. (Clifford Janes, U. S. Atty., St. Paul, Minn., on the brief), for appellee.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

David Bohn was convicted on jury trial of attempting to evade and defeat wagering excise taxes owing by him in violation of Section 7201, Internal Revenue Code of 1954, (26 U.S.C.A. § 7201) which provides:

> "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

Section 4401, Internal Revenue Code of 1954, (26 U.S.C.A. § 4401) imposes the excise tax as follows:

> "(a) Wagers.—There shall be imposed on wagers, as defined in section 4421, an excise tax equal to 10 percent of the amount thereof.
>
> \* \* \* \* \* \*
>
> "(c) Persons liable for tax.— Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. Each person who conducts any wagering pool or lottery shall be liable for and shall pay the tax under this subchapter on all wagers placed in such pool or lottery."

Section 4421, Internal Revenue Code of 1954, (26 U.S.C.A. § 4421) defines "wager" as follows:

> "(1) Wager.—The term 'wager' means—
>
> "(A) any wager with respect to a sports event or a contest placed

with a person engaged in the business of accepting such wagers,"

The indictment was in two counts: the first covering the fiscal year ending June 30, 1956, and the second, the period from July 1, 1956 to on or about February 27, 1957. On the verdict of guilty as to the first count the court ordered the defendant to be put on probation and on the same verdict as to the second count, imprisonment for a year and a day and a fine of $5,000 were imposed. The defendant appeals.

It appeared on the trial that in his applications for life insurance in 1954, and in 1955 during the indictment period, the appellant described his occupation as "card room operator" and "bookmaker" and in his federal income tax returns he reported that his principal business activity was "Gambling (dice & cards)" from which he reported adjusted gross income in 1954 of $11,200; in 1955, $14,391; and in 1956, $15,165.64. But as early as 1952 certain revenue agents called on him and informed him about the statutory regulation and requirements for keeping records and making returns in respect to wagers on sports events placed with a person engaged in the business of accepting such wagers and the excise tax of 10 percent thereon. Thereafter, in March of 1954, a notice was served on him by the Internal Revenue Service that he was not maintaining sufficient records and advising him of the requirements. It was stipulated on the trial that appellant never purchased an occupational tax stamp of $50 and that he never filed returns for wagers on sports events or paid any excise tax on such wagers.

There was evidence that although appellant's tax returns listed his place of business at his home, during the indictment period, he had two rooms rented in the Park Plaza Hotel in Minneapolis which he had equipped with a Western Union Sports Ticker used to receive reports of scores on all types of sports events throughout the country. He also had two telephones installed in the rooms with non-published numbers. He used aliases in registering for the rooms and the utilities and when called on to make a deposit in connection with long distance calls he used cash money.

Internal revenue agents kept a watch on him for a period and also ascertained the number of his long distance telephone calls at his home and at his quarters in the hotel. They obtained the telephone numbers and names of the holders of the telephones to whom appellant talked long distance. They also watched him going back and forth in his car between his home and the hotel, observed items that he carried on his person, observed him at work in his hotel quarters through binoculars, and learned who his associates were. They interviewed many persons and obtained sworn statements from them and in November of 1956, made application to the United States Commissioner at Minneapolis for search warrants to search the person of appellant, his residence and his rooms at the Park Plaza Hotel for described records, books and papers, they had reason to believe were there concealed and used in his attempt to evade and defeat wagering excise taxes due from him.

No attempt was made to entrap appellant or to tap his telephone wires, but the circumstantial evidence accumulated and presented in the affidavits of twenty of the agents, together with attached exhibits, satisfied the Commissioner that there was probable cause to believe that described property, including bookmaking and wagering documents and paraphernalia, was intended for use and had been and was being used as a means of committing offenses in violation of specified statutes, including Section 7201, and was being concealed on the described premises. The issuance and service of the search warrants produced government exhibits 23, 24 and 25, which included a certain black red-bound ledger type book and writings and accounts having to do with appellant's business. On analysis these exhibits tended to show that appellant was excluding his wagering transactions from his accounts and concealing all evidence of them.

On the trial the government called five witnesses: Samuel Golden and Martin F. Weinar of Minneapolis; Joe F. Blindman of Jonesboro, Arkansas; Thomas Buchanan of Fargo, North Dakota; and Anthony Couri of Peoria, Illinois, each of whom testified that he had placed many wagers on sports events with appellant during the indictment period. Their testimony presented a clear picture of the ways and means by which appellant engaged in and carried on the business of accepting wagers over the telephone at his residence and at his hotel quarters. Their testimony was to the effect that an aggregate of between $190,000 and $250,000 in wagers on sports events had been placed with appellant by these witnesses alone during the indictment period. They obtained the odds, handicaps, and terms of the wagers over the telephone from appellant. They chose the side to bet on and the amount of the wager. There was evidence that appellant accepted wagers on both sides of individual sports events. All the transactions were in cash, delivered personally and sent through the mail, and where payment was by bank money order, appellant was not named as payee but arranged to obtain his money thereon without having to endorse his name. He carried no bank account to reflect, in the ordinary way, his receipts from his business and memoranda recording his wagering activities were destroyed.

In addition to appellant's own admission that he was a bookmaker, which the dictionary defines as a professional receiver of bets, witnesses who placed wagers with him as such and knew of the fact, testified positively that he was a bookmaker. It was fairly inferrable, as shown by the context of their testimony, that they meant that he was engaged in the business of accepting wagers on sports events.

There was also substantial evidence that appellant concealed and misstated facts concerning his wagering business. In his income tax returns he described his place of business as being the same as that of his residence and made no mention of his hotel quarters where he was constantly engaged in accepting wagers on sports events. He described his occupation as "Gambling (dice & cards)" and made no reference to his wagering on sports events. He used aliases in registering and paying for his hotel rooms and the paraphernalia adapted to carrying on the business of wagering at the hotel. Computations and figuring of income for return purposes, included in the books and papers seized under the search warrants, show that he excluded all reference to the wagers he made with the five witnesses above mentioned. He kept the numbers of the telephones in the hotel rooms unlisted. His acts were adapted to conceal and mislead as to his wagering activities.

The court gave the following instructions to which no exceptions were taken at the time:

" * * * a law of the United States provides as follows:

" 'Each person who is engaged in the business of accepting wagers shall be liable for and shall pay * * * (a tax) * * * on all wagers placed with him.'

"The tax imposed is an excise tax and the law provides that the amount of the tax is 10 percent of the amount of the wager.

"The obligation to pay the tax arises when the wager is accepted by the person engaged in the business of accepting wagers. Thus, the tax is not applicable to persons who are not engaged in the business of accepting wagers who make so-called friendly or personal bets.

*     *     *     *     *     *

"Now, you will note that the defendant is not charged with gambling. In fact, there is no Federal law against gambling. That is a matter normally handled by State and local governments. The defendant is not charged with any kind of an income tax violation. He is not charged with failing to pay the $50

gambling occupational tax, but he is charged with willfully and knowingly attempting to evade and defeat the wagering tax due and owing the United States.

"The term wager as used in the law which I read to you a moment ago means any wager with respect to a sports event or a contest placed with a person engaged in a business of accepting such wagers.

\* \* \* \* \* \*

"To establish its case the Government must prove beyond a reasonable doubt the following three elements:

"First, that during the period charged in the indictment the defendant was engaged in the business of accepting wagers.

"Second, that substantial excise tax on those wagers was due and owing by him to the United States.

"Third, that the defendant willfully attempted to evade and defeat the tax.

"The gist of the offense charged in the indictment is a willful attempt on the part of the taxpayer to evade or defeat the 10 percent excise tax imposed on wagers. The word 'attempt' as used in this law involves two things: An intent to evade or defeat the tax and some act done in furtherance of this intent. The word 'attempt' contemplates that the defendant had knowledge and understanding that during the period charged in the indictment he had accepted wagers upon which a 10 percent excise tax was imposed, and which he was required by law to report and to pay, and that he attempted in some manner to evade and defeat that tax. In proving its case that defendant attempted to evade and defeat the tax, the Government is required to show beyond a reasonable doubt that the commission of acts by defendant calculated to mislead and conceal, in addition to proof that defendant willfully failed to file

excise tax returns and pay the excise tax.

\* \* \* \* \* \*

"The word 'willful' as used in the law I have read to you means: With knowledge of one's obligation to pay the tax due, and with intent to defraud the Government of that tax."

Appellant contends on this appeal that the court erred: (1) in refusing peremptory instructions for defendant for insufficiency of evidence; (2) in denying the motion to dismiss the indictment as fatally defective; (3) in denying defendant's motion for bill of particulars; (4) in denying his motion to strike and suppress evidence given by the witness Samuel Golden; and (5) in certain rulings on the trial.

That wagers with respect to sports events were placed with appellant in large and in small amounts constantly from day to day throughout the indictment period was established by competent evidence and whether appellant was engaged in the business of accepting such wagers and excise tax was due from them was submitted to the jury under clear and proper instructions. The evidence shows that appellant not only failed to report his wagers in respect to sports events, and failed to pay excise tax on them, but there was abundant evidence of affirmative acts on his part adapted to conceal and secrete them. All of the elements of the charge were supported by substantial evidence and the denial of peremptory instructions for defendant was without error.

■ Appellant contends that the indictment was fatally defective because it failed to allege that he owed wagering taxes in a substantial amount. But the indictment did charge that he engaged in the business of accepting wagers and became liable and was required to pay the excise tax of 10 percent of the amount of the wagers and by bill of particulars it was explained that the total amount of wagers accepted by appellant was unknown but that the government had evidence and expected to prove at the trial as to the first count that 10 percent excise

tax was owing by appellant on wagers of approximately $100,000 and as to the second count 10 percent on wagers of approximately $50,000. Thus appellant was clearly charged with owing excise taxes and sufficient approximations of the amounts were given him. Other alleged defects of the indictment do not require discussion. We are satisfied that the indictment stated an offense in each count and sufficiently informed appellant and identified the offenses charged. The ruling in respect to it was without error.

The requests in appellant's motion for a bill of particulars argued here are: (a) to be informed of the city and state where his business was conducted; (b) whether he conducted it alone or with others, and if with others, their names; (c) the names of those who placed wagers with him, and; (d) the amount of wagering taxes due.

■ Appellant complains, especially under (b) and (c), that he was not informed that one Samuel Golden would be called as a witness. Golden ran a small cigar store and restaurant in Minneapolis and constantly and continuously placed wagers in respect to sports events with appellant. Persons came to the store and placed bets which Golden placed with appellant. At certain times appellant paid him $75 per month. The government called Golden as its first witness and he did not testify to any participation in appellant's attempt to evade tax which was the gist of the charge against appellant. He knew relevant evidential facts and was in the same category as the other witnesses who told of the defendant's accepting wagers on sports events from them and the details of the transactions. We do not hold and are cited to no federal law establishing that the government was obliged to give the appellant the names of the witnesses it intended to use. The decision of Justice Whittaker (then District Judge) in United States v. Smith, D.C., 16 F.R.D. 372, cited and relied on by appellant declares no such obligation. The prosecution there was for the sale of narcotics and the court held, on motion for bill of particulars and in the exercise of its discretion as to count one of the indictment, that defendant should be told the time and place and the names of the persons to whom the alleged unlawful sales were made and whether the purchaser was in the employ or acting at the instance of the government. The court then held that " * * * the government (having given the facts respecting the offenses, and the name of the person with whom the defendant is alleged to have dealt) should not be required to state the names and addresses of the witnesses it proposes to use upon the trial." 16 F.R.D. at page 376. We find no abuse of discretion in denying the motion for bill of particulars in this case; nor in receiving the evidence of the witness Samuel Golden; nor in refusing to grant a mistrial because Golden was called and permitted to testify. If there had been any prejudicial surprise to appellant in Golden's testimony, appellant could have asked for continuance to present rebuttal. But he chose to stand on the evidence given by the witnesses the government called, without taking the witness stand or offering any evidence, and may not dispute it here.

■ Complaint is made that the court did not give the jury a definition of the words of the statute "a person engaged in the business of accepting such wagers". Counsel did not formulate and request a definition that would better describe the transactions subject to the excise tax and we are not persuaded that the court was required to do so. The word "business" and the phrase "engaged in business" are of common usage and there is no reason to treat jurors as though they were unfamiliar with them. The question whether appellant was "engaged in the business" as charged in this case was a question within ordinary understanding of a taxpayer or of a juror. United States v. Gordon, 3 Cir., 242 F.2d 122, 126–127; Kahn v. United States, 9 Cir., 251 F.2d 160, 162.

Appellant also complains that the court erred in failing to properly and correctly define the meaning of the word "bookmaker" and of the meaning of the words

"placing bets on both sides of a transaction". When the jury requested a legal definition of the term bookmaker, the court stated:

"Well, I didn't give you a legal definition of the term bookmaker. There isn't any in the statute. I don't think you need a legal definition of the term bookmaker. I believe some of the witnesses said what they thought a bookmaker was. I could give you the dictionary definition of it, but I don't now as you need to be concerned about what a bookmaker is. I think you need to draw a factual conclusion as to whether or not the defendant comes within the requirements of the statute, and one of the requirements was and is that a person, in order to be subject to the payment of this 10 percent excise tax, be a person engaged in the business of accepting wagers.

"Now, it may well be and you may well conclude that that means bookmaker. That is the parlance of the street, but the law defines a person who is subject to the tax as a person who is engaged in the business of accepting wagers. * * *."

■ To the jury's request for a definition of "taking bets on both sides of the odds" the court gave substantially the same explanation. The court then instructed the jury that they should not lose sight of their mission, to find out whether or not appellant was engaged in the business of accepting wagers; whether or not he was liable for the excise tax; whether he filed the required returns and paid the tax; and whether he had committed an affirmative act which would indicate his intent to defeat or evade the tax.

We think the court properly directed the jury's attention to its primary function and the real issue for determination. While some other matters have been presented and fully considered, they do not require discussion.

We hold that the judgment appealed from is without error and it is in all respects,

Affirmed.