UNITED STATES of America,
Plaintiff,

v.

Everett A. SMITH, aka "Warpy," aka "Smitty"; Enoch F. Veazey, aka "Possum"; Abraham Kauffman, aka "Abe"; and Walter P. Groesser, Defendants.

Cr. No. 19506.

United States District Court
E. D. Illinois.

Oct. 23, 1962.

½

Carl W. Feickert, U. S. Atty., for United States.

Morris A. Shenker, and Murry L. Randall, St. Louis, Mo., for defendant Everett A. Smith.

John B. Raffaelle, East St. Louis, Ill., for defendant Enoch F. Veazey.

R. B. Hendricks, East St. Louis, Ill., for defendant Abraham Kauffman.

Charles M. Shaw, Clayton, Mo., for defendant Walter P. Groesser.

JUERGENS, District Judge.

An eleven count indictment was returned against the defendants Everett A. Smith, aka "Warpy," aka "Smitty"; Enoch F. Veazey, aka "Possum"; Abraham Kauffman, aka "Abe"; and Walter P. Groesser.

Count I charges all of the defendants with violation of Section 1084, Title 18 United States Code.

Counts II and III charge defendant Smith with violation of Section 1084, Title 18 United States Code.

Counts IV and V charge the defendant Smith with the violation of Section 1952, Title 18 United States Code.

Count VI charges the defendant Veazey with violation of Section 1084, Title 18, United States Code; and Count VII charges the same defendant with violation of Section 1952, Title 18 United States Code.

Count VIII charges the defendant Kauffman with violation of Section 1084, Title 18 United States Code; and Count

IX charges this defendant with violation of Section 1952, Title 18 United States Code.

Counts X and XI charge the defendant Groesser with violation of Section 1084, Title 18 United States Code.

Defendant Smith filed his motions for bill of particulars; to suppress evidence; for production of documentary evidence and objects under Rule 17(c) of the Federal Rules of Criminal Procedure, Title 18 U.S.C.; for discovery and inspection under Rule 16, Title 18 U.S.C.; for severance, to strike; and to dismiss the indictment.

The motions will be considered in order.

■■ The purpose of a bill of particulars is to inform the defendant of the crime for which he must stand trial. It is not to be used to compel the disclosure of how much the government can prove and how much it cannot, nor to foreclose the government from using proof it may develop as the trial approaches. The rule is that if a defendant is not sufficiently informed by an indictment of the nature and cause of the accusations made against him and is fearful that upon trial he will be surprised by the evidence of the government, he can apply for a bill of particulars which the trial court, in the exercise of a sound legal discretion, may grant or refuse as the ends of justice require. Mellor v. United States, 8 Cir., 160 F.2d 757.

■ Discovery in criminal proceedings is not comparable to discovery in civil cases because of the nature of the issues, the danger of intimidation of witnesses and the greater danger of perjury and subornation of perjury. The defendant must find his compensation in the presumption of innocence and in the high burden of proof which the prosecution must meet. United States v. Malinsky, 1956, D.C., 19 F.R.D. 426.

■ The indictment here reveals that the charges against the defendant are pleaded in detail and the details pleaded are sufficient to give him notice of the charges against which he is to defend. It is likewise sufficient to enable him to plead acquittal or conviction in bar of any future prosecution for the same offense. The acts for which the charges are made are set out at length. Careful scrutiny of the indictment leads to the conclusion that it is sufficient and that a bill of particulars is not warranted. The motion for bill of particulars will be denied.

■ Next, defendant Smith moves to suppress as evidence all items seized from his person and from his 1960 Parkwood Chevrolet station wagon on November 15, 1961 and to suppress all evidence obtained as a result of leads supplied by such search and seizure for the reasons that the two warrants issued on November 14, 1961 for the searches and seizures were invalid in that they weren't issued upon probable cause; that the affidavits upon which they were based did not state sufficient facts to establish probable cause; that the searches and seizures were unlawful and not incident to an arrest and in violation of the Fourth and Fifth Amendments of the Constitution of the United States. The defendant further asks that the United States be ordered to return the items seized.

On November 14, 1961 United States Commissioner Elvira Fellner issued a search warrant directed to Frank R. Hudak, or Donald B. Yerly, or any other special agent of the Intelligence Division of the Internal Revenue Service, commanding them to search the person named in the warrant, namely, John Doe, alias "Warpy," alias Everett Smith, for property specified in the warrant and further ordered that the search be conducted in the daytime and if the property be found to seize it, leaving a copy of the warrant and a receipt for the property taken, and to prepare a written inventory of the property seized, to return the warrant and bring the property before the commissioner within ten days of the date of issuance. The property was described in the warrant as bookmaking records and wagering paraphernalia, consisting of bet slips, run-down sheets, recap sheets, books, memoranda, tickets, pads,

tablets, papers, sporting events pool cards, racing forms, scratch sheets, money used in or derived from a wagering operation, and divers other wagering paraphernalia.

On the same day a search warrant of similar import was issued by the same commissioner and commanded the search of one 1960 white Chevrolet station wagon, bearing 1961 Illinois license number EL 7220.

According to the returns, Donald B. Yerly executed both search warrants and made the search as commanded by each, prepared an inventory of the property taken and returned it to the commissioner.

Each of the search warrants was issued pursuant to the affidavits of various special agents of the Intelligence Division of the Internal Revenue Service of the United States, wherein they set forth facts upon which the requests for search warrants were made.

The court has examined the various affidavits, the search warrants and the returns thereof and finds that the returns of the searches were proper, that the search warrants were properly issued and that the affidavits state facts which fully justify the issuance of the warrants.

The information contained in the affidavits is based on personal knowledge and observation of the agents making them; examination of the affidavits discloses that there was probable cause for the issuance of the warrants.

The defendant's motion to suppress will be denied.

▆▆▆ In his motion for production of documentary evidence and objects under Rule 17(c), Federal Rules of Criminal Procedure, Title 18 U.S.C., the defendant moves the court for an order directing that all books, papers, documents and objects designated in the attached subpoena be produced before the court at a time prior to trial and further directing that upon their production the defendant and his attorneys be permitted to inspect and copy said books, papers, documents and objects.

By his subpoena the defendant asks for (a) all books, papers, documents and objects seized from Everett A. Smith and from his 1960 Parkwood Chevrolet station wagon on November 15, 1961; (b) all books, papers, documents and objects seized from defendants Enoch F. Veazey, Abraham Kauffman and Walter P. Groesser on November 15, 1961, or on any other date; and (c) all books, papers, documents and objects obtained by the government from others which the government presented to the grand jury, expects to use as evidence at the trial, or is material to the trial or defense of this case.

Carl W. Feickert, United States Attorney in and for the Eastern District of Illinois, filed his motion to modify or quash parts of the subpoena. The United States Attorney asserts he is willing to produce in court on the day of trial all books, papers, documents and objects seized from Everett A. Smith or from his automobile and all books, papers, documents and objects which originally belonged to the defendant Smith but denies that he is entitled to the books, papers, documents and objects seized from his co-defendants.

▆▆▆ Rule 17(c) is not a pretrial discovery procedure but is designed as an aid in obtaining evidence which a defendant can use at the trial. In allowing inspection, the trial court has much discretion, and the rule has been construed as sanctioning inspection only when good cause is shown. United States v. Malizia, 1957, D.C., 154 F.Supp. 511. The fact that subpoenaed material may be evidentiary and subject to production at the trial under a subpoena duces tecum does not mean that the defendant is entitled as a matter of right to pretrial production and inspection under the rule. Whether pretrial production and inspection will be required is discretionary.

▆▆▆ In a given case in determining whether discretion should be exercised in favor of or against pretrial production and discovery under Rule 17 (c), it is necessary to keep in mind that although Rule 17(c) and Rule 16 have

related purposes, they have different functions and applications. One of the practical objectives of 17(c) is to provide a means for sifting, in advance of trial, documents to be offered in evidence where they are multitudinous. A guard must be established against action under Rule 17(c) which, contrary to its spirit and purpose, is aimed at discovery. The purpose of a subpoena duces tecum is to enable a party to obtain evidence at the trial to use in support of his case and not to pry into the case of his adversary.

 While the court should be liberal in criminal actions in holding documents to be evidentiary for the purpose of permitting their production at the trial by subpoena, pretrial production and inspection, however, is a different matter, and it should be conditioned on some showing by the defendant that the subpoenaed documents have evidentiary, rather than discovery, value to him.

 The defendant has failed to show that the materials sought under the subpoena are evidentiary in nature, has not set forth in his motion any reasonable grounds why the subpoenaed materials should be produced and consequently has presented no showing of good cause, which is a necessary and indispensable criterion in a request for pretrial production of documents under Rule 17(c).

The subpoena discloses that the defendant is on a fishing expedition by which he hopes to net all of the government's evidence, contrary to the purpose of Rule 17(c).

The court will in its discretion grant the motion of the United States Attorney to quash the subpoena as it pertains to pretrial discovery and the subpoena requesting pretrial discovery will be quashed.

 Rule 16 of the Federal Rules of Criminal Procedure, Title 18 U.S.C., provides as follows:

"Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. * * * "

This rule provides for the discovery of documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, after a showing that the request is reasonable and that the items sought may be material to the preparation of the defendant's case. United States v. Louie Gim Hall, D.C., 18 F.R.D. 384.

Before a defendant is entitled to inspection and copying or photographing of designated books, papers, documents, etc., there must first be a showing that the items requested are material and that the request is reasonable. In order to make such a showing, something more is required under the rules than mere allegations on the part of the defendant.

The motion here requests all books, papers, documents and objects, obtained from or belonging to the defendant or obtained from others by seizure or by process. It does not designate any documents or things but is a mere naked request for all documents. The defendant has made no showing that his request is reasonable as is required by the rules. He seeks to have the door opened in order to discover the government's evidence and the details of the government's case. He is not entitled to such evidence except upon a showing that the ends of justice cannot otherwise be served. Here there has been no such showing. United States v. Taylor, 1960, D.C., 25 F.R.D. 225.

The defendant's motion for discovery and inspection under Rule 16 will be denied.

 The defendant Everett A. Smith has filed his motion for severance, wherein he asks for a separate trial from the other defendants and asserts in support thereof that evidence in this cause may

be introduced by the government which may be inadmissible against this defendant but which may be admissible against one or more of his co-defendants, all to the prejudice of this defendant; that the jury will be unable to distinguish the alleged acts of this defendant from the alleged acts of his co-defendants; and that this defendant, as well as his co-defendants, will obtain a fairer and more impartial trial if he is tried alone.

Rule 14 of the Federal Rules of Criminal Procedure, Title 18 U.S.C., provides:

"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

■■ An application for severance is addressed to the sound discretion of the court. Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101. In deciding such application the court must determine whether the alleged prejudice to the defendant's being joined and tried with other defendants overbalances possible prejudice to the government which might result from a separate trial. United States v. Dioguardi, 1956, D.C., 20 F.R.D. 10.

■ Where proof of the charges against all of the defendants is largely dependent upon the same evidence and the alleged acts are of the same or similar character, severance should not be granted except for the most cogent reasons. A trial of many defendants may be conducted with care and decorum so that the court may place whatever safeguards commend themselves in its efforts to afford each defendant a separate and impartial consideration of his case.

By exercising care in charging the jury and marshaling evidence at the end of the trial, the trial judge can materially aid the jury in successfully considering each defendant separately. United States v. Bonanno, 1959, D.C., 177 F. Supp. 106.

Joinder of defenses and defendants is prescribed by Rule 8 of the Federal Rules of Criminal Procedure, Title 18 U.S.C. Rule 8 provides in pertinent parts as follows:

"(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

■ Where two or more defendants are indicted for a joint transaction, it is inadvisable to split up the case into many parts for separate trials in the absence of very strong and cogent reasons therefor. This is especially true in conspiracy charges from the very nature of the case. Davenport v. United States, 9 Cir. 1958, 260 F.2d 591.

After full consideration, the court finds that under the circumstances of this case it would not be justified in granting a severance and is of the opinion that a severance is unnecessary to avoid prejudice to this defendant or his co-defendants.

At the trial of the cause the trial judge may adequately guard against the charges made by the defendant in his motion, if in fact these charges are true, by properly instructing the jury concerning the

evidence as it is admitted. Discretion must be exercised in such matters so that over-all justice may be done, and the court in the exercise of that discretion must in the interest of justice deny the defendant's motion for severance.

■ Defendant Smith moves to strike from the indictment all references to alleged violations of the statutes of the states of Illinois and Missouri and to alleged violations of Section 1952, Title 18 U.S.C., for the reason that Section 1952 applies only to transportation facilities and not to the use of a telephone facility and for the further reason that such allegations are prejudicial to the defendant in the trial of the case.

Section 1952, Title 18 U.S.C., provides in pertinent parts as follows:

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

"(1) distribute the proceeds of any unlawful activity; or

"(2) commit any crime of violence to further any unlawful activity; or

"(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, * * * in violation of the laws of the State in which they are committed or of the United States, * * *."

The defendant argues that the enactment of the statute infringes on a power retained solely by the states and is not within the powers of the federal government and that the section applies only to transportation facilities and further argues that the statute is limited to transportation facilities and that transportation facilities do not include the use of a telephone. He points out that the title of the section as enacted is "Interstate and foreign travel or transportation in aid of racketeering enterprises" and argues that when the bill, after having been passed by the Senate, was referred to the House certain amendments were made but that these were of a technical nature; that as originally introduced it was limited to transportation facilities; that the action by the House did not enlarge the scope of the statute; and that the House action did not contemplate the broadening of the bill beyond "transportation facilities."

■ That Congress has broad power to regulate interstate commerce cannot be successfully disputed. It can regulate interstate commerce to the extent of forbidding and punishing the use of interstate commerce as an agency to promote immorality, dishonesty or the spread of evil or harm to the people of other states from the state of its origin. By such regulation it is merely exercising its police power for the benefit of the public in the field of interstate commerce. Brooks v. United States, 1925, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699.

■ In enacting the present statute Congress did no more than it is entitled to do in the field of interstate commerce; thus, the defendant's argument that Congress encroached upon the right reserved to the states in enacting Section 1952 of Title 18 U.S.C. is without merit.

In the legislative history of the act the purpose of the bill was set out as follows:

"The purpose of the bill, as amended, is to amend chapter 95, title 18, United States Code, by adding a new section designated 1952, to prohibit travel in interstate or foreign commerce or the use of the facilities of interstate or foreign commerce, including the mail, in the aid of racketeering enterprises. * * *." U.S.Code Congressional and Administrative News, Volume 2, p. 2664, 87th Congress, First Session, 1961.

The legislative history likewise makes it emphatically clear that the bill is a part of the Attorney General's crime program to combat organized crime and racketeering. The Attorney General in testifying before Congress in support of the bill cited numerous instances of the use of facilities of interstate commerce by racketeers and hoodlums to promote the illegal enterprises, to distribute the proceeds among the syndicate members of illegal gambling, liquor, narcotics and prostitution businesses and the use of the facilities for the commission of crimes of violence in furtherance of their unlawful activities. He spoke of racketeers living in one state and controlling the rackets and reaping the profits from those rackets located in another state.

The following statement taken from the legislative history seems to indicate beyond question the intent of the Congress to preclude the use of interstate facilities of every kind from use by persons in violation of the laws of the states within which they reside or operate. At page 2665 of U.S.Code Congressional and Administrative News, Volume 2, 87th Congress, First Session, 1961 there appears the following:

"The interstate tentacles of this octopus known as 'organized crime' or 'the syndicate' can only be cut by making it a Federal offense to use the facilities of interstate commerce in the carrying on of these nefarious activities.

"This bill will assist local law enforcement by denying interstate facilities to individuals engaged in illegal gambling, liquor, narcotics or prostitution business enterprises. Testimony produced at the hearings clearly demonstrated the interstate network of criminals engaged in such unlawful activities. It further demonstrated the need for the assistance of the Federal Government in view of the fact that law enforcement authorities are limited and hindered by the interstate nature of these activities."

■ By this statute Congress prohibited the use of facilities in interstate commerce and did not limit its application to cases in which there was an actual physical transportation of substantive materials in interstate commerce. To limit the word "facilities" to transportation facilities alone (meaning by transportation facilities the actual physical transportation of some material substance) would be to defeat the very purpose of the statute. The courts should not interpret a statute in such a manner as to strip it of its meaning but rather should look to the statute as it is written and give to it the same meaning that was intended by the Congress at the time of its enactment.

Congress intended that communication facilities in interstate commerce should be included within the scope of the prohibitions of the statute, and to limit the application of the statute to the area urged by the defendant, namely, the actual physical transportation of material substances in commerce, would defeat the intent and purpose of Congress in passing the statute.

■■ Even if the term "transportation" facilities were used in the body of the statute, the conduct here complained of would nevertheless be within its reach since by the use of a telephone a voice or a message can be and is actually transported by wires across state lines to the same extent as materials are transported over state lines in moving vehicles. The federal government clearly has power to regulate interstate commerce in the fields of communication, which include telephone, telegraph, radio and distribution of power over electric lines, to the same extent that it has power to regulate actual physical movements of persons and objects across state lines. Broad liberal meaning and interpretation must be given to the acts of Congress and the language used therein, especially when it can be, and has been, determined by the act itself or its legislative history what it is that the Congress is trying to accomplish by the passage of the act.

The defendant's motion to strike should be denied.

In support of his motion to dismiss, defendant Smith asserts that:

(1) the indictment and each count thereof is vague and uncertain and fails to apprise the defendant of the crime with which he is charged in sufficient clarity to permit him to prepare a defense and adequately defend himself;

(2) that Sections 1084 and 1952, Title 18 U.S.C., are unconstitutional and void for want of certainty in that they fail to set up any ascertainable standard of conduct either as to their meaning or as to the persons within their scope;

(3) that the sections are attempted legislation on matters beyond the scope and authority of the Congress of the United States;

(4) that the sections are void for being in contravention of the First Amendment of the Constitution of the United States as a restriction on freedom of speech;

(5) that Counts IV and V of the indictment fail to state an offense in that the use of the telephone is not the use of any facility in interstate commerce within the meaning of Section 1952;

(6) that the provision of Section 1952 assimilating state law is void and unconstitutional for vagueness and uncertainty and unconstitutional delegation of Congressional legislative power to the states;

(7) that Counts IV and V are a duplication of the allegations in Counts II and III and place the defendant in jeopardy twice for the same offense;

(8) that Count I of the indictment contains allegations with respect to alleged violations of the laws of the states of Illinois and Missouri and to alleged violation of Section 1952, Title 18 U.S.C., in the use of a telephone and that said section applies to transportation facilities and not to the use of the telephone facility.

The defendant's objections in numbers 3, 5 and 8 are dealt with above and will not be again considered.

An indictment is sufficient if it alleges basic facts covering the essential elements of the crime with enough particularity to fairly apprise the defendant of the nature of the charge and to enable him to protect himself from a subsequent prosecution for the same offense.

Under Rule 7(c) of the Federal Rules of Criminal Procedure, Title 18, it is provided:

" * * * The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * * "

The purpose of an indictment is to furnish the accused with such a description of the charge against him as will enable him to prepare his defense and to inform the court of the facts alleged so that it may decide whether they are sufficient in law to support a conviction if one should be obtained. Harper v. United States, 8 Cir., 143 F.2d 795.

The indictment in the instant case sets forth facts which constitute the essential elements of the crimes and follows the statute pursuant to which the charges are made. If the statute is constitutional, then the indictment is sufficient.

The defendant argues that Sections 1084 and 1952 are unconstitutionally vague and void for want of certainty in that they fail to set up any ascertainable standard of conduct.

To satisfy the due process requirements, all that is necessary is that the language of the statute convey sufficiently definite warning as to proscribed conduct when measured by common understanding and practices. Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

Words used in a statute should be given their ordinary meaning unless express Congressional definition is provided.

Section 1084, Title 18 U.S.C., provides:

"(a) Whoever being engaged in the business of betting or wagering

knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined * *."

It will be noted that Congress in enacting Section 1084, Title 18 U.S.C., described wire communication as a "facility."

Section 1952 prohibits the use of any facility in interstate commerce.

Webster defines "facility" as "A thing that promotes the ease of any action, operation, or course of conduct." Webster's Collegiate Dictionary, Fifth Edition. Following that definition, it can readily be seen that the use of a telephone may clearly be classified as a facility in interstate commerce.

When Congress selected the word "facility," it was fully cognizant of the broad meaning of the word and, without doubt, meant that it should be employed in its fullest sense.

The words "promote," "manage," "establish," "carry on" or "facilitate the promotion, management, establishment or carrying on" are words which have a general meaning, and no serious argument can be presented by which it may be successfully contended that these words are either vague or ambiguous or have some obscure meaning.

"Unlawful activity" as defined by the statute means "any business enterprise involving gambling, * * * in violation of the laws of the State in which they are committed * * *." There can be no doubt about the meaning intended to be placed upon these words by Congress. The language is clear and unambiguous.

The word "business" and the phrase "engaged in business" are of common usage and may readily be understood by a simple reading of the statute. In Bohn v. United States, 8 Cir. 1958, 260 F.2d 773, the court had the following to say:

"* * * * The word 'business' and the phrase 'engaged in business' are of common usage and there is no reason to treat jurors as though they were unfamiliar with them. The question whether appellant was 'engaged in the business' as charged in this case was a question within ordinary understanding of a taxpayer or of a juror."

And in Kahn v. United States, 9 Cir. 1958, 251 F.2d 160, the court stated as follows:

"Though the statutes involved in this appeal are relatively new, and 'engaged in business' is not fully defined as used in them, there is no reason to believe that the definition in relation to the acceptance of wagers should vary greatly from the construction of that phrase as used in other revenue statutes. * * * *"

In the light of the above and foregoing, neither Section 1084 nor Section 1952 is anything other than clear and unambiguous in their wording when the words thereof are given their usual and accepted meaning.

■■■ The assertion that the statutes are unconstitutional as a restriction on freedom of speech is without merit. While the First Amendment provides freedom of speech, it does not guarantee or protect criminal conduct. There is no conflict between the statutes here involved and the guarantee of the First Amendment. These statutes do not restrict freedom of speech; they merely prohibit the use of interstate facilities to certain conduct which the Congress has declared to be illegal.

■ The defendant's assertion that Counts IV and V are duplicitous of the allegations of Counts II and III and place the defendant in jeopardy twice for the same offense is not borne out by the indictment.

Counts II and III charge the defendant Smith with a violation of Section 1084, Title 18 United States Code; however,

the acts upon which the counts are based occurred on different days and are, accordingly, different offenses. Counts IV and V charge the defendant Smith with violations of Section 1952 and are likewise based on acts occurring on different dates. The date of the charge contained in Count II and Count IV is the same and the dates involved in Count III and Count V are the same; however, the defendant is charged with violating two different statutes, which require different elements of proof.

Where separate counts of an indictment require proof of a fact not necessary to be proved under another count, the double jeopardy contention is without merit. United States v. Visconti, 2 Cir. 1958, 261 F.2d 215.

The defendant's motion to dismiss the indictment should be denied.