THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ROSENDO CRUZ ORTEGA, Defendant and Appellant.

No. CR-66-482.　　Decided June 28, 1967.

128

*Rafael Ydrach Yordán* for appellant. *J. B. Fernández Badillo, . Solicitor General,* and *Ida Cardona Hernández, Assistant Solicitor General,* for The People.

PER CURIAM: On March 21, 1966, Rosendo Cruz Ortega, upon being accused and convicted of two violations of the Bolita Act, was sentenced, by the Superior Court, San Juan Part, to serve seven months in jail for each count, to be served concurrently.

On appeal he assigns that the trial court committed six errors. We do not agree for the reasons below.

The following brief but complete statement of the case made by the Solicitor General in his memorandum, is correct:

"The only witness for the prosecution was agent Eduardo Martínez, who testified the following:

"He is an undercover agent under the Vice Control Division in the metropolitan area, and on the dates of the events— April 24 and May 23, 1965—he was stationed in the area of Tras Talleres in Santurce. He intervened for the first time with defendant-appellant—whom he knows and identified on the day of the trial—on April 24 about 3:00 p.m. in Bar La

Villa on Labra Street in Santurce. He describes the transaction he made with the latter as follows:

> 'I was at Bar La Villa when defendant arrived and stood outside, and some time later he entered and asked a man who was serving, whether he was going to gamble, and the latter told him to jot down No. 321 for him with one dollar; he took out a piece of wrapping paper from his pocket, and then I asked him whether that was for the Bolita game, and he said yes, and asked whether I wanted him to jot down a number for me and I told him to jot down me for No. 004 with one dollar.'

"He specified that defendant-appellant jotted down the number on a piece of paper which he took out from under his shirt and that that paper: 'contained three-digit figures followed by a hyphen and amounts at the right hand side, which figures are typical of the illegal game of bolita.'

"About 10:30 a.m., on May 23, 1965 the agent again made another transaction with defendant-appellant, at Peter's Bar on Labra Street in Santurce. The agent describes the transaction as follows:

> 'I was at Peter's Bar when Rosendo Cruz [defendant] arrived greeting and asking whether they were going to bet, then I told him to jot down No. 207 for me with one dollar; he took a folded piece of white paper from the left-hand pocket of his shirt and said paper contained three-digit figures followed by a hyphen and amounts at the right side, typical figures of the illegal game of bolita.'

"On cross-examination he specified that he knew defendant-appellant since . . . March because: 'Well, I visited the bars in Tras Talleres and he used to go to that bar.' That they were friends and they talked about different things, . . . about sports. He testified that the first time he bet on a number he asked him for a receipt, but that the latter did not give it to him because: 'Almost no fixer gives receipt.' That he did not ask for a receipt the second time.

"Upon questioning whether he was acquainted with the businesses in Tras Talleres, he answered yes, and clarified the statement made by the attorney for the defense in his question as to whether Peter's Bar did not open during the day, but at night after 6:00 p.m. The agent answered that as said

business is so close to the school it opens after 4:30 p.m. Monday through Friday and on holidays and Saturdays and Sundays it opens in the morning. He specified the measurements of the paper in which defendant-appellant jotted down the number of the person who bet before he did on April 24, that he did not see the numbers bet by said person, but that he knows it was for the bolita game because:

'. . . the man told him. The fixer asked whether they were going to bet and the man told him to jot down No. 321 for him and when I asked whether it was bolita game I got up from the armchair where I was sitting and then I saw the figures he was jotting down.'

"The judge asked the agent whether that was the only bolita case he had in court and the latter answered that he had a lot more and plenty of dates and figures in relation to investigations.

"As evidence for the defense the defendant testified and he denied knowing the agent, or having seen him; that he knows where those businesses are located because he has passed by, that he has never sold bolita tickets, that he does not sell bolita tickets.

"On cross-examination he said that he lives at 357 Comercio Street in Tras Talleres."

*"First Error:*

"The court erred in denying the bill of particulars requested by defendant before the trial, thus depriving him of his lawful right to adequately prepare and organize his defense and, therefore, to have a fair trial."

This assignment is based on the fact that the prosecuting attorney did not answer a petition for a bill of particulars as to (a) whether defendant jotted down figures or letters, and on what kind of material, and with what kind of instrument, which figures did he jot down, and whether he jotted down amounts and in the presence of what person or persons, and in what place; (b) whether other persons were present in the alleged transaction, indicating names and addresses and personal circumstances; (c) whether the witness rendered a report to his superiors on defendant's alleged of-

fense, furnished copy of said report and (d) whether the witness for the prosecution offered any other service in relation to other alleged offenses, on the day it is alleged that the offense was committed, to report said services specifying the names of the alleged defendants, place and time of the facts and all the circumstances of said services.

The trial court sustained the refusal of the prosecuting attorney to furnish said information. It did not err in so doing.

We said in *People* v. *Ramírez*, 50 P.R.R. 224, 233–234 (1936) that the granting of a bill of particulars in a criminal case is not an absolute right of the defendant. It depends upon the sound discretion of the court before which the trial is to be had. Therefore the ruling is not reversible unless an evident abuse of discretion is shown and that the lack of a bill of particulars prevented defendant from preparing his defense properly. In the case at bar no abuse of discretion has been shown nor any impediment for the preparation of the defense, which consisted in that the appellant was never engaged in selling bolita material and that he did not know the witness for the prosecution nor had ever seen him. Some of the particulars requested appeared in the information, some were easily obtainable and in part dealt with a request to discover the evidence or the theory of the case for which the bill of particulars is not proper. *United States* v. *Bonnet*, 247 F.Supp. 415 (U.S.D.C. E. D. La. 1965); *United States* v. *Smith*, 209 F.Supp. 907 (U.S.D.C. E. D. Ill. 1962).

*"Second and Fourth Errors:*

"The trial court erred in convicting defendant without the due process of law, depriving him of his right to a just and speedy trial."

"In the light of the doctrine in *People* v. *Seda*, 82 P.R.R. 695, the State could not prosecute defendant for the second violation of the Bolita Act, in having delayed his arrest for the

first violation, for which reason the trial court erred in convicting him of both charges."

■ We agree with the Solicitor General in that the trial court did not commit these errors for the reasons which, copied from his memorandum, are as follows:

"The facts for which defendant was prosecuted occurred on April 24 and May 23, 1965, respectively. The information was sworn on November 6, 1965. The sworn statement which served as the basis for the determination of probable cause and the arrest was sworn and signed by agent Eduardo Martínez on November 6, 1965 and the warrant of arrest was issued that same day.

"It is necessary to refer to the fact that the undercover agent was in that area until November 1965 and it is on the first days of that month—on the 6th—that he takes the steps afore-described.

"Note that significantly the sworn statement which served as the basis for the determination of probable cause was produced by the agent precisely on November 6, 1965. It is evident that he did it in the first opportunity he had after the investigatory period and when he did not risk his personal identity anymore in the area where he had been stationed. A premature action in that sense could have thwarted the purpose of his official mission.

"So that said apparent delay was justified in view of the type and method of investigation—undercover police activity—which was being used and the need thereof in this kind of offenses. . . ."

We reiterated in *People* v. *Soto Zaragoza*, 94 P.R.R. 332 (1967).

"Furthermore, . . . defendant's testimony did not establish that he suffered 'the difficult position of defenselessness in which the prosecuting attorney placed him,' because of the time elapsed."

*"Third and Fifth Errors:*

"The court committed grave error in convicting defendant on *inherently improbable* and *incredible* evidence."

"The court appealed from committed grave error in convicting defendant on the sole basis of the oral testimony of the only witness for the prosecution, because said testimony was not sufficient."

■ The trial court did not commit said errors. The evidence for the prosecution clearly established appellant's guilt. The agent's testimony is precise, accurate, specific, and therein the transactions performed with appellant, the hours, dates, and places where they occurred, the specification of the paper on which appellant jotted down the number for the person who bet before the agent did as well as the number that the latter bet, are narrated in detail. The evidence in question is not "inherently improbable or incredible" but sufficient to support the conviction.

*"Sixth Error:*

"The trial court erred in, at least, not delaying the holding of the trial for any hour in the afternoon of the same day of session, so as to offer defendant the opportunity to produce the testimony of a witness for the defense who was not present."

■ This case had been continued in November 1965 and it was set for hearing on March 21, 1966, so that the defense had sufficient time to find the witness, who, according to counsel for the defense, could not come to court this last day. Appellant did not indicate the reason for his absence, or the nature or importance of his testimony, or the prejudice which his absence might cause his defense. Therefore, we have not been placed in a position to conclude that the trial court committed this error.

In view of the foregoing the judgment will be affirmed.

Mr. Chief Justice Negrón Fernández did not participate herein. Mr. Justice Santana Becerra did not participate herein. Mr. Justice Hernández Matos and Mr. Justice Dávila dissented.