EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ROSENDO CRUZ ORTEGA, acusado y apelante.

*Número:* CR-66-482      *Resuelto:* 28 de junio de 1967

*Rafael Ydrach Yordán,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* e *Ida Cardona Hernández, Procuradora General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Rosendo Cruz Ortega, acusado y convicto de dos cargos por infracción a la Ley de Bolita, fue sentenciado por el Tribunal Superior, Sala de San Juan, en 21 de marzo de 1966 a siete meses de cárcel con respecto a cada cargo, a cumplirse concurrentemente.

Apunta en apelación que el tribunal de instancia incurrió en seis errores. No tiene razón como demostraremos a continuación.

La siguiente sucinta pero completa relación de los hechos del caso, hecha por el Procurador General en su memorando, es correcta:

"El único testigo de cargo lo fue el agente Eduardo Martínez quien declaró lo siguiente:

Es agente encubierto de la División Control del Vicio de la zona metropolitana y para las fechas de los hechos—24 de abril y 23 de mayo de 1965—prestaba sus servicios en el sector de Tras Talleres en Santurce. Intervino con el acusado-apelante—a quien conoce e identificó el día de la vista—por primera vez el día 24 de abril como a las 3:00 de la tarde en el Bar La Villa en la Calle Labra de Santurce. Describe la transacción que realizó con éste así:

'Yo me encontraba en el Bar La Villa cuando llegó el acusado parándose en la parte afuera y al rato entró y preguntó a un señor que estaba sirviendo que si iba a jugar y éste le dijo que le apuntara el 321 con un dólar, sacando un papel de estrazas del bolsillo y ahí yo le dije que si era para la bolita y me dijo que sí que si quería que me apuntara uno y yo le dije que me apuntara el 004 con un dólar.'

Especificó que el acusado-apelante apuntó el número en un papel que sacó de la camisa y que ese papel: 'contenía números de tres cifras seguidos de guión y cantidades a la derecha números típicos para el juego ilegal de la bolita.'

El 23 de mayo de 1965 el agente volvió a hacer otra transacción con el acusado-apelante, en el Peter's Bar en la Calle Labra de Santurce alrededor de las 10:30 de la mañana. El agente describe la transacción así:

'Yo me encontraba en el Peter's Bar cuando llegó el Sr. Rosendo Cruz [el acusado] saludando y preguntando que si iban a jugar, que si iban a apuntar entonces yo le dije que me apuntara el 207 con un dólar sacando éste un papel blanco doblado, del bolsillo izquierdo de la camisa y este papel contenía números de tres cifras seguidos de guión y cantidades a la derecha, números típicos para el juego ilegal de la bolita.'

En el contrainterrogatorio especificó que conocía al acusado-apelante desde . . . marzo debido a que: 'Bueno yo frecuentaba los bares de Tras Talleres y él iba a ese bar.' Que tenían amistad y hablaban de diferentes cosas, . . . de deportes. Declaró que la primera vez que le jugó un número le pidió contraseña, pero que éste no se la dio porque: 'Casi ningún bolitero da contraseña.' Que no le pidió contraseña la segunda vez.

A la pregunta de si estaba familiarizado con los negocios de Tras Talleres, respondió que sí y aclaró la afirmación que hacía el abogado-defensor en su pregunta de que si el Peter's Bar no abría de día y sí de noche a partir de las 6:00 de la tarde. Contestó el agente que el referido negocio, como está bastante cerca de una escuela, abre de lunes a viernes después de las 4:30 P.M. y que los días de fiesta y sábados y domingos abre por la mañana. Especificó las medidas que tenía el papel en que el acusado-apelante apuntó el número de la persona que le jugó primero que él el día 24 de abril, que los números que jugó esa persona no los vio, pero que sabe que era bolita porque:

'. . . se lo dijo señor. El preguntó que si iban a jugar y él dijo que le apuntara el 321 y cuando yo le pregunté si era bolita me bajé de la butaca donde estaba y entonces ví los números que estaba apuntando.'

El Juez le preguntó al agente si ese era el único caso de bolita que tenía en el Tribunal y éste contestó que tenía muchos más y profusión de fechas y números en relación con investigaciones.

Como prueba de defensa se presentó al acusado quien negó que conociera al agente, o que lo hubiese visto, sabe donde que-

dan esos negocios porque ha pasado por allí, nunca le ha vendido bolita, que no vende bolita.

En el contrainterrogatorio dijo que vive en la Calle Comercio 357 de Tras Talleres."

*"Primer Error:*

Erró el Tribunal apelado al denegar los particulares solicitados por el acusado antes del juicio, privándolo así de su legítimo derecho a preparar y organizar adecuadamente su defensa y por ende a un juicio justo. (Fair Trial)."

Se basa este apuntamiento en que el Ministerio Público no contestó una solicitud de particulares sobre (a) si el acusado apuntó número o letras y en qué material y con qué instrumento, qué números apuntó y si apuntó cantidades y delante de quién o quiénes y en qué sitio; (b) si estaban presentes en la supuesta transacción otras personas indicando nombres y direcciones y circunstancias personales; (c) si el testigo rindió informe a sus superiores sobre el alegado delito del acusado, suministró copia de dicho informe y (d) si el testigo de cargo prestó algún otro servicio el día que se alega se cometió el delito en relación con otros supuestos delitos, informe dichos servicios con especificación de nombres de los supuestos acusados, sitio y hora de los hechos y todas las circunstancias de dichos servicios.

El tribunal de instancia sostuvo la negativa del fiscal a proveer la referida información. No erró al así actuar.

Dijimos en *Pueblo* v. *Ramírez,* 50 D.P.R. 234, 245 (1936), que la concesión de una especificación de particulares en un caso criminal no es un derecho absoluto del acusado. Depende de la sana discreción de la corte ante la cual ha de celebrarse el juicio. Por lo tanto la resolución de ésta no es revocable a menos que se demuestre un claro abuso de discreción y que la falta de la especificación impidió al acusado preparar debidamente su defensa. En el caso ante nos no se ha demostrado ni abuso de discreción ni impedimento alguno en la preparación de la defensa que consistió

en que el apelante nunca se dedicó a vender bolita y en que no conocía al testigo de cargo ni lo había visto antes. Parte de la información solicitada aparecía relacionada en la acusación, parte era fácilmente obtenible y en parte se trataba de una solicitud de descubrimiento de prueba o de la teoría del caso para lo cual no procede la especificación de particulares. *United States* v. *Bonnet*, 247 F.Supp. 415 (U.S.D.C. Ed. 1965); *United States* v. *Smith*, 209 F.Supp. 907 (U.S.D.C. Ed. Ill. 1962).

"*Segundo y Cuarto Errores:*

Cometió error el Tribunal *a quo* al condenar al acusado sin el debido proceso de ley, privándolo de su derecho a un juicio justo y rápido."

"A la luz de la doctrina del caso de *Pueblo* v. *Seda*, 82 D.P.R. 719, el Estado no podía enjuiciar al acusado por la segunda infracción a la Ley de Bolita, al haber dilatado su arresto por la primera infracción, por lo que cometió error el Tribunal juzgador al condenarlo en ambos cargos."

■ Convenimos con el Procurador General que el tribunal de instancia no incurrió en estos errores por los fundamentos que, copiados de su memorándum, son los siguientes:

"Los hechos por los cuales se juzgó al acusado ocurrieron el 24 de abril y 23 de mayo de 1965, respectivamente. La denuncia se juró el 6 de noviembre de 1965. La declaración jurada que sirvió de base para la determinación de causa probable y del arresto fue jurada y suscrita por el agente Eduardo Martínez el 6 de noviembre de 1965 y la orden de arresto se expidió ese mismo día.

Es preciso referirnos al hecho de que el agente encubierto estuvo en el área hasta noviembre de 1965 y es en los primeros días de ese mes—el día 6—que realiza las gestiones arriba descritas.

Obsérvese que significativamente la declaración jurada que sirvió de base para la determinación de causa probable la produjo el agente precisamente el día 6 de noviembre de 1965. Es evidente que lo hizo en la primera oportunidad que tuvo

después del período investigativo y cuando ya no ponía en peligro la identidad de su persona en el área que se le había asignado. Una actuación prematura en este sentido, hubiese podido malograr el propósito de su encomienda oficial.

Así que esa aparente tardanza tenía una justificación dado el tipo y método de la investigación—actividad encubierta—que se utilizaba y cuya necesidad en esta clase de delitos . . . ." Reiteramos en *Pueblo* v. *Soto Zaragoza,* 94 · D.P.R. 350 (1967) :

"Además, . . . el testimonio del acusado no estableció que sufriese 'la difícil posición de indefensión en que lo colocó el poder acusador,' debido al tiempo que transcurrió."

*"Tercero y Quinto Errores:*

Cometió grave error el Tribunal apelado al condenar al acusado con pruebas *inherentemente improbables* e *increíbles."*

"El tribunal apelado cometió grave error al condenar al acusado a base únicamente del testimonio oral del único testigo de cargo, por ser insuficiente dicho testimonio."

■ El tribunal de instancia no incidió en estos extremos. La prueba de cargo estableció con toda claridad la culpabilidad del apelante. El testimonio del agente es detallado, minucioso, específico, en el cual se relatan con detalles las transacciones realizadas con el apelante, las horas, fechas y sitios en que ocurrieron, la especificación del papel en que el apelante apuntó el número de la persona que jugó antes que el agente así como el número que este último jugó. La prueba en cuestión no es "inherentemente improbable e increíble" sino suficiente para sostener la convicción.

*"Sexto Error:*

Cometió error el Tribunal juzgador en, al menos, no dilatar la celebración del juicio para horas de la tarde del mismo día de sesión, para brindar así oportunidad al acusado de que produjera el testimonio de un testigo de defensa que estaba ausente."

■ Este caso había sido suspendido en noviembre de 1965 y se señaló para vista en 21 de marzo de 1966 de

manera que la defensa tuvo tiempo suficiente para localizar al testigo quien de acuerdo con la representación legal de la defensa, no había podido estar este último día en el tribunal. El apelante no indicó a qué se debía su ausencia, ni la naturaleza e importancia de su testimonio ni el perjuicio que le pudiese causar su ausencia a su defensa. Por lo tanto no se nos ha colocado en condiciones de concluir que el tribunal de instancia incurrió en este error.

*En vista de lo expuesto se confirmará la referida sentencia en este caso.*

El Juez Presidente Señor Negrón Fernández no intervino. El Juez Asociado Señor Santana Becerra no intervino. Los Jueces Asociados Señores Hernández Matos y Dávila disienten.