**UNITED STATES of America**
v.
**Carolyn S. McDANIELS et al.***
**Crim. No. 72–330.**

United States District Court,
E. D. Louisiana.

Jan. 26, 1973.

See also D.C., 57 F.R.D. 171.

---

8. *See*, 1 Williston on Contracts, § 39, 3rd ed. 1957.

* Consolidated with
 U. S. v. Gladys Fascio, Crim. 72–331
 U. S. v. Deola R. Richardson (two cases) 72–332, Crim. 72–334
 U. S. v. Eartha St. Ann, Crim 72–333

U. S. v. Audrey Lee Delair, Crim. 72–335
U. S. v. Maxine Smith, Crim. 72–336
U. S. v. Wilhemenia Brown, Crim. 72–337
U. S. v. Lorchid Goff, Crim. 72–338
U. S. v. Evelyna Bannister, Crim. 72–339
U. S. v. Diane Evans, Crim. 72–340
U. S. v. Ella Rita Sanchez, Crim. 72–342.

Robert Livingston, Asst. U. S. Atty., Richard B. Sobol, Washington, D. C., for defendants in Crim. Nos. 72–330, 332, 333, 334, 335, 337, 338, 340 and 342 and for defendants other than Althea Oates in Crim. No. 72–331.

Louis Gerdes, Jr., New Orleans, La., for Althea Oates.

Charles Garretson, New Orleans, La., for Anna Jones Perkins.

Joseph A. Barreca, New Orleans, La., for Christine Walker.

Nils Douglas, New Orleans, La., for Lorchid Goff.

ALVIN B. RUBIN, District Judge:

## DEFENDANTS' MOTION FOR HEARING ON HEW REGULATIONS

Defendants move for an evidentiary hearing to determine whether a series of HEW and state regulations governing investigatory procedures were complied with in the investigation of these cases and their preparation for prosecution. If the regulations were not adhered to, defendants urge, all of the fruits of any improper investigation must be suppressed, relying on Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, and Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct 1684, 6 L.Ed.2d 1081.

No specific contention is made that these regulations were violated. The defendants assert that information to support such an allegation is not available to them at this time.[1]

As a predicate to determining whether the court should order an evidentiary hearing, the premise that violation of the provisions in question either man-

---

1. To demonstrate that this is not a mere fishing expedition, the defendants argue that this is the first and only federal prosecution of alleged welfare fraud by indictment under the mail fraud statutes in the history of the welfare program; the felony prosecutions were brought under the mail fraud statutes despite the availability of specific criminal misdemeanor provisions contained in the Social Security Act, 42 U.S.C. § 1307; and that the entire Department of Welfare files of those defendants who applied for or were receiving AFDC benefits, which contain at least some material not relevant to the prosecutions here, are being kept in the offices of the U. S. Postal Inspector, in violation of federal and state confidentiality regulations.

They also contend that newspaper articles indicate that the prosecutions are being pursued with unusual zeal, increasing the possibility of unauthorized prosecutorial procedural steps.

dates or warrants suppression of any evidence must be examined.

## I. THE APPLICABLE REGULATIONS

Section 402 of the Act, 42 U.S.C. § 602, requires that a state plan provide "for entering into cooperative arrangements with appropriate courts and law enforcement officials . . . with respect to . . . matters of common concern to such courts or officials and the State . . . or local agency administering the State plan . . . ." Section 1102, 42 U.S.C. § 1302 authorizes the Secretaries of the Treasury, Labor, and HEW "shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which each is charged under this chapter."

Pursuant to this authority, the Secretary of HEW issued regulations with respect to state plan requirements. These regulations provide, inter alia, that:

(1) state welfare agency personnel shall identify and refer instances of suspected fraud in their programs to the proper authorities, including state law enforcement officials. 45 C.F.R. § 235.110.

(2) information concerning applicants and recipients may be used by law enforcement authorities only

in situations where some specific evidence of fraud has been uncovered, and require that, whenever possible, the family or individual welfare beneficiary be informed of a "request for [such] information from an outside source, and permission [be] obtained to meet the request." 45 C.F.R. § 205.-50(a)(z)(iii)(V). See Establishing Priorities for the Poor, Hearing Before the Senate Finance Committee, 92 Cong., 2d Sess. at 148–149 (Feb. 15, 1972).[2]

(3) prohibit contacts with persons outside the welfare agency (collateral contacts) that seek information concerning a recipient without his permission in determining initial and continuing eligibility. 45 C.F.R. § 206.10(a)(12).

## II. THE ORIGINS OF THE SUPPRESSION DOCTRINE

■ While the defendants do not assert a Fourth Amendment violation,[3] the motion to suppress evidence on the basis that law enforcement agencies did not acquire it in a lawful manner stems from the illegal search and seizure cases.

*Weeks* and *Mapp, supra,* establish the rule that evidence obtained in violation of a constitutional right of a defendant may not be used at the trial of the

---

2. Louisiana has adopted the essentials of this regulation by statute:

"All applications for assistance and all case records of clients . . . shall be confidential; and it shall be unlawful, except for purposes directly connected with the administration of * * * aid to dependent children * * * for any person to solicit, disclose, receive or make use of or to authorize or knowingly permit * * * the use of any * * * information concerning, persons applying for or receiving such assistance, derived from the records, papers or files, or other records of the state, parish or district thereof, or acquired in the course of the performance of official duties." La.Rev.Stat. 46:65.

3. And, indeed, could not do so because the documents in question were filed by them

voluntarily with the governmental agency that is claimed, albeit tentatively, to have misused them. They are saved from Fourth Amendment proscriptions, however, because, given the fact of defendants' participation in and relationship with the Louisiana public welfare program, their expectation of privacy with respect to the materials contained in the agency files was different from and substantially less than if the papers had been in the defendants' own possession. See United States v. Birrell, 2 Cir. 1972, 470 F.2d 113; Katz v. United States, 1967, 389 U.S. 347, 352, 88 S.Ct. 507, 510–511, 19 L.Ed.2d 576; Manusci v. Deforte, 1968, 392 U.S. 364, 368, 88 S.Ct. 2120, 20 L.Ed.2d 1154.

charges against him. The rationale of the exclusionary rule is that only by withholding illegally obtained evidence from use can fundamental rights be safeguarded.

The imposition of this exclusionary rule is a harsh remedy. It requires that inherently relevant and trustworthy evidence be suppressed, with the risk that the criminal will "go free because the constable blundered." People v. Defore, 1926, 242 N.Y.2d 13, 150 N.E. 585, 587.

The exclusionary rule has also been criticized on the basis that the evil that it seeks to eliminate, the unconstitutional taking of evidence, is best handled by punishment of the offender rather than by suppression of the evidence. Hence its doctrinal validity and justification have been the subject of continuing debate. Boyd v. United States, 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Palko v. Connecticut, 1937, 302 U. S. 319, 58 S.Ct. 149, 82 L.Ed. 288; Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Wolf v. People of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782; Irvine v. People of California, 1954, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561; Oaks, Studying the Exclusionary Rule in Search and Seizure, 37 U.Chi.L.Rev. 665, 756 (1970).

■ It is needless here to discuss the necessity for exclusion of evidence in cases within the rationale of the rule; it need be said only that the arguments for admitting evidence of probative force in any case should preclude its suppression unless that is at least a logical method of achieving the objective of requiring law enforcement officers to act within the law.[4]

## III. VIOLATION OF REGULATIONS AS A BASIS FOR SUPPRESSION

■■ Rules and regulations promulgated by government agencies, pursuant to mandate or delegation of authority from Congress, have the force and effect of laws. Farmer v. Philadelphia Elec. Co., 3 Cir., 1964, 329 F.2d 3. The officials of an Executive department that promulgates rules are likewise held to compliance with their own standards. Id.; Service v. Dulles, 1957, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403; and Colony Motors, Inc. v. United States, D. C.Conn.1967, 280 F.Supp. 235.

The HEW regulations provide for methods of investigation of suspected fraud that do not infringe the legal rights of persons involved, are consistent with principles recognized as affording due process of law, and in general protect the privacy of welfare applicants and recipients. Deviations from these regulatory procedures deprive such persons of that intended protection.

The exclusionary rule was extended to statutory violations (obtaining evidence by wiretap in violation of Section 605 of the Communications Act of 1934) in Nardone v. United States, 1937, 302 U.S. 379, 58 S.Ct. 275. Justice Roberts said, "Congress may have thought it less important that some offenders should go unwhipped of justice than that officers should resort to methods deemed inconsistent with ethical standards and destructive of personal liberty." 302 U.S. at 383, 58 S.Ct. at 277.

A series of cases dealing, not with suppression of evidence, but with administrative action in violation of the regulations of the agency itself has established the doctrine summed up in United States v. Heffner, 4 Cir. 1969, 420 F. 2d 809, as follows:

"An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down. This doctrine was announced in United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). There, the Supreme Court vacated a deportation order of the Board of Im-

---

4. It may be that the ultimate test would be the stronger one, that this is shown to be the only effective means of reaching that goal.

migration because the procedure leading to the order did not conform to the relevant regulations. The failure of the Board and of the Department of Justice to follow their own established procedures was held a violation of due process. The *Accardi* doctrine was subsequently applied by the Supreme Court in Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1959), and Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), to vacate the discharges of government employees. See also Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963). And the *Accardi* doctrine has been utilized by the courts of appeal. E. g., United States ex rel. Brooks v. Clifford, 409 F.2d 700, 706 (4 Cir.), rehearing denied 412 F.2d 1137 (4 Cir. 1969); Hammond v. Lenfest, 398 F.2d 705, 715 (2 Cir.), vacated on rehearing on other grounds, 398 F.2d 718 (2 Cir. 1968); Pacific Molasses Co. v. FTC, 356 F.2d 386, 389–390 (5 Cir. 1966); Sangamon Valley Television Corp. v. United States, 106 U.S. App.D.C. 30, 269 F.2d 221, 224–225 (1959)."

*Heffner, supra,* set aside a tax fraud conviction based in part on a statement obtained without complying with IRS regulations.

The First Circuit, in an opinion by Judge Coffin has suppressed evidence sought to be used in a tax fraud prosecution obtained by Special Agents of the Internal Revenue Service in violation of IRS regulations designed to protect individual rights. United States v. Leahey, 1st Cir. 1970, 434 F.2d 7. But that court recognized that exclusion is not the inevitable result of noncompliance with regulations: it considered the purpose of the agency regulations, the effect of publicity given them, the reasonableness and likelihood of reliance on them by taxpayers and their advisers, and concluded that, under all the circumstances, "the agency had a duty to conform to its procedure, . . . citizens have a right to rely on conformance, and that the courts must enforce both the right and [the] duty" by excluding the evidence obtained. Id., 434 F.2d at 11. See also United States v. Borgese, S.D.N.Y.1964, 235 F.Supp. 286, 291, denying an evidentiary hearing because the regulations in question were not meant to provide special individual protection.

In both *Heffner* and *Leahey* the courts were enforcing rights stemming from, but not required by Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 112 L.Ed.2d 977, and Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. However, the decisions are not limited in principle to warnings against self incrimination. *Leahey* assessed the importance of the particular interest violated and considered the low degree of agency incentive to enforce its regulation if its agents' conduct did not affect the results of a prosecution[5] that stemmed from their work.

Here the regulations were directed to state welfare agencies, not federal investigative officers. But as has been pointed out, these regulations were not merely directive, intended to promote some agency efficiency goal, but

---

5. These reasons closely parallel the three judicial justifications for the exclusionary rule in constitutional cases:

    A. The right to be free of unreasonable intrusions upon the privacy of citizens, established only after years of endeavor and suffering, are valued so highly that society is willing to pay the price of exclusion to secure it, Weeks, 34 S.Ct. at 393; Mapp, 81 S.Ct. at 1691–1692.

    B. The evil of government participation in illegal conduct destructive of fundamental rights and the impropriety of such conduct warrants it, *Weeks*; *Mapp, supra*; Oaks, Search and Seizure Law at 668, *supra.*

    C. The exclusion of such evidence will deter law enforcement authorities from such conduct and result in reduced violations of the search and seizure rules, Id.

were fashioned to secure the beneficiary's right of privacy.

█ The court cannot at this time determine, or even intimate, any opinion concerning whether or not any regulations were violated and, even if they were, whether some, all, or none of the evidence should be suppressed.[6] It is enough, for the purpose of this motion, to determine whether the violation of the regulations involved here could conceivably result in suppression. A situation egregious enough in its invalidity to warrant that result can be supposed.

HEW policy is set forth in HEW comments at a Hearing before the Committee on Finance, United States Senate, Ninety-Second Congress, Second Session, February 15, 1972, Pamphlet 78 252, U. S. Government Printing Office.

"HEW regulations do not hamper prosecution of suspected welfare fraud, desertion, or child support cases. On the contrary, HEW regulations require State welfare officials to cooperate with law enforcement officers in cases in which fraud or desertion are suspected or in which the paternity of a child born out of wedlock must be established. State welfare agencies are also required to report to law enforcement officials all cases involving suspected fraud, desertion, or abandonment. Id. at 148.

\* \* \* \* \* \*

"HEW's regulations specifically require State welfare agencies to cooperate with law enforcement officials in developing procedures for referral of situations in which the existence of welfare fraud is suspected by the welfare agency itself. (Attachment 3) Under such procedures, of course, the State welfare agency has an affirmative obligation to disclose to law enforcement authorities all information it has concerning a welfare recipient which is pertinent to the question of welfare fraud. Id. at 148–149.

\* \* \* \* \* \*

"Although a well-run State welfare program could turn up most cases of welfare fraud, it is not possible for the State or local welfare agency to identify all such cases. Where law enforcement officials identify a case of suspected welfare fraud which has gone undetected by the welfare agency and wish to take action, there is no Federal statutory provision or HEW regulation which prevents the State welfare agency from disclosing information bearing on the question of welfare fraud to those officials. Disclosure of information unrelated to the suspected fraudulent conduct is, of course, both unnecessary and undesirable, and the welfare agency therefore has the responsibility to make available from the case file only such information as is needed for the investigation of the fraudulent activity in question. Also, it would be administratively disruptive and a violation of the legislatively mandated principle of confidentiality to permit unlimited access to all case-files when the law enforcement officials have no specific instance of welfare fraud in mind, but

---

6. That decision can be made only when it has been established whether the regulations have been complied with; if noncompliance is established, then the exact nature of the failure to adhere to regulations will be important. That determination will include an evaluation of the willfulness, if any, of the violation; the extent of deviation from the regulations; the extent of invasion of privacy; the justification shown, if any; the extent to which the evidence might have been available from other sources; the extent to which procedural regularity in investigations may be achieved in some other manner than by suppression and the results of the application of an exclusionary rule.

The threshold question of compliance, vel non, will be guided both by the language of the regulations in question and the underlying policy rationales of those regulations. In the latter connection particular attention will be given congressional hearings bearing on the reasons for their promulgation and their subsequent interpretation. See Establishing Priorities for the Poor, Hearing Before the Senate Finance Committee, 92 Cong., 2d Sess. at 148–149 (Feb. 15, 1972).

merely suspect that such fraud exists generally in the program."

This is the Agency's interpretation of its own regulations. However, there is no way to determine whether the agency's policy has in fact been followed here, or whether there has been "a violation of the legislatively mandated principle of confidentiality" without an evidentiary hearing.

Hence the defendants are entitled to a day in court to offer such proof as they can. After the evidence is in, the court will be able to determine whether or not there was any violation in fact: if there was none, the legal issue is moot. If there was, then the question of suppression will be considered in the light of all the regulations and the actual conduct involved.

Accordingly, the defendants' motion for an evidentiary hearing to determine compliance with HEW regulations is granted.